## Case No. 7,205.

The JANE CAMPBELL.

[Blatchf. Pr. Cas. 101; 20 Leg. Int. 125.] [1]

District Court, S. D. New York. Feb. 25, 1862.

BETTS, District Judge. This vessel and cargo were seized at sea, off the port of Beaufort, North Carolina, on the 14th of December, 1861, by the United States steamship of war State of Georgia, and sent into this port as prize, and libelled by the United States and her captors, January 3, 1862. Several other vessels-of-war were, at the time, present at the same station. On the 21st of January, George Campbell intervened and claimed the vessel and cargo, as sole owner of both. The claim of the owner and

[1] [Reported by Samuel Blatchford, Esq. 20 Leg. Int. 125, contains only a partial report.]

the protest of the owner and master set forth with great particularity the grounds upon which the rightfulness of the seizure is contested, and these particulars are reiterated in substance on the examination in preparatorio of those parties. No exception is taken by the libellants to that mode of defence. The main grounds upon which the arrest is maintained, on the part of the libellants, are that the vessel and cargo were really enemy property, though simulated as neutral; that both were procured fraudulently, and with intent to violate the blockade of the port of Beaufort, North Carolina; and that the voyage had been prosecuted for that purpose, up to the time of their seizure in the immediate vicinity of that port. The vessel and cargo belonged wholly to the claimant, and were taken possession of when approaching a blockaded port, under circumstances which justified a suspicion that the object was to enter the port without lawful authority or justifiable cause. But a preliminary question is raised by the defence, impeaching the regularity of the proceedings of the captors, which, in itself, it is alleged takes away all legal justification for the arrest. This irregularity is charged to have been the breaking open and spoliation of the cargo by the captors, after the seizure of the vessel; not bringing into port the master and officers; wrongfully separating the members of the ship's company from the vessel, after her capture, and treating them harshly and unjustly afterwards and then sending the prize into the remote port of New York without them, under the charge of an incompetent crew; and carrying the English flag, under which she had been captured lowered, and the American flag hoisted over it, on her passage and when brought into this port.

The settled rule of prize courts is to require the captors to bring in, for examination before the judge or commissioners, the master and principal officers and some of the crew of the captured vessel, and the examination must be confined to them, unless special permission of the court is obtained to examine others. 1 Wheat. [14 U. S.] Append., Story, J., note, page 496. Prize law, as administered in the English, American, and French tribunals, also inhibits, under the disallowance of the right of prize to captors, and the positive infliction of punishment by penalties and costs adjudged against them, any irregularities against the property seized or the captured crews, especially where the latter are neutral. 2 Wheat. [15 U. S.] Append. pp. 5–7, and notes, and authorities there collected. The general principle declared and enforced is that captors are held responsible for any gross irregularity or wanton impropriety towards the property seized or the ship's company arrested with it, and a satisfactory reason will be exacted for any deviation by the captors from the regular course of pro-

ceedings in prize cases. These doctrines are recognized and vigorously applied in the French ordinances (Id. note), and by mutual acquiescence among maritime nations, they supply the restraint which accompany the exercise of belligerent rights under the improved administration of prize law.

Before considering the countervailing evidence, and assuming the proofs to be that the vessel and cargo are neutral property, seized only because of a design and attempt by the vessel to violate the blockade of the port of Beaufort, and that the blockade was at the time an efficient one, the question arises whether the conduct of the captors after the capture was of a character to destroy the legality of the arrest, and to subject the captors, personally, to punishment for the infringement of the laws of maritime warfare. If this was so, it will be immaterial to inquire into the reality of the neutral ownership set up, because such misconduct, if established, operates with equal force against the libellants, though the property seized belongs wholly to the enemy; for the right of seizure by the belligerent captors is dependent upon the lawful use of that power by the captors at sea, when made under the authority of the general prize law alone. The first object will, therefore, be, to fix the character of the misconduct ascribed to the libellants, and see whether it was accompanied by circumstances of excuse or mitigation. The evidence as to these charges comes wholly from the claimants. No testimony is furnished on the part of the libellants, nor do they ask permission to put in further proofs in denial or extenuation of the misconduct charged against them in the claim and the proofs thereon. The claim, filed under oath by the claimant, and supported by the preparatory proofs, alleges, that when the schooner was arrested by the United States ship-of-war State of Georgia, her papers were examined by the boarding officer, and pronounced to be all right; that the schooner was then towed to the anchorage of the United States squadron, to be furnished the repairs she needed; that her cargo was also examined, and the crew of the seizing vessel permitted to help themselves to anything they could get; that the captain of the Albatross, (another United States ship-of-war in company,) in the presence and with the assent of the prize master, took from the prize schooner eight muskets, with cartridges and caps, the private property of the claimant, carried on board of the schooner for her protection, none of which have ever been restored to the claimant or the vessel; that the claimant, who was on board of the schooner for the voyage, her mate and three seamen, were wrongfully removed from the vessel, without their consent, and were sent by other conveyances to Baltimore, and were there left on shore, without provision or means to reach New York, other than at their own ex-

pense; and that the schooner was sent to that port in charge of a prize-master, who was not capable of navigating the vessel to New York, and had to rely on the seamanship of her master. The claimant also makes his own and the master's public protest, attested to on the 20th of January, 1862, and annexed to the claim as a part thereof. That sets up and avers, that the prize master, in bringing the schooner into the port of New York, when off Barnegat, caused the American flag to be hoisted over the British colors upon her, and the same thing again done when off the Highlands of Neversink, and had these colors so kept up thereafter until she arrived in port at the navy yard at Brooklyn. The burden is always laid upon captors to prove the existence of an overruling necessity justifying the spoliation of property found on the prize, or the separation of the officers or crew from the captured vessel, or the omission to send them into port with the prize, for examination. Arnold v. Del Col [Case No. 556]; S. C. 3 Dall. [3 U. S.] 333. The captors will be made personally responsible for goods so embezzled (The Concordia, 2 C. Rob. Adm. 103), unless they were properly out of the actual possession of the captors at the time of the spoliation. The Maria, 4 C. Rob. Adm. 352. So, also, if a proper place or proper means are not adopted for bringing the captured property in, for prompt trial. The Washington, 6 C. Rob. Adm. 275. The claim or protests cannot be regarded as affirmative proof in the cause against the libellants, especially those who made the capture, but they sufficiently indicate the exceptions which will be urged on the hearing against the validity of the capture, and should have placed the libellants on their diligence to supply other proof enabling the court to understand correctly the facts of the case, if they have been wrongfully stated or disclosed in the preparatory proofs given.

The evidence, as it stands, in my judgment, fastens upon the libellants unjustifiable conduct towards the crew and property on the prize after her arrest, for which misbehavior the captors are responsible in damages to the parties affected thereby, it being in no way excused, or shown to have been reasonably required by any exigencies of the case. The occurrence may very probably become the subject of diplomatic notice between Great Britain and this country, particularly as to the reprehensible treatment of the English flag; but the claimants are entitled personally to compensation through the authority of the court, for injuries sustained by them from unlawful acts of the captors, perpetrated under the seizure, if duly proved on the trial. Although the libellants did not proceed to make the capture of the schooner absolute until seven days after she was in their possession, yet I think the circumstances surrounding her, disclosed in the proof, afforded reasonable grounds of suspicion that the voyage was set on foot and prosecuted with intent to violate the blockade at Beaufort, North Carolina. The officers of the vessel, and the owner of the vessel and cargo, who accompanied the voyage, well knew, before entering upon it, that a blockade had been imposed at that port. Moreover they had been long residents at that place, or engaged in business there. The schooner was American-built, and was purchased and laden at that port, by the claimants, after the war, with a cargo procured there, and immediately after arriving at Liverpool she fitted out, and undertook this voyage, upon which she was arrested. But these grounds of suspicion are virtually displaced by the evidence contained in the papers found on board of the vessel, and gathered orally in the preparatory testimony, showing that the vessel was neutral property, and was pursuing her voyage, on a proper route, to Cuba, until she was compelled by accidents happening at sea, to seek an intermediate port or resource for immediate repairs to render her seaworthy and navigable. The capturing squadron was satisfied of the actual necessity for such repairs, and attempted to supply them at their anchorage; but, on ascertaining the nature of her lading, her own origin, and the antecedent history of her owner, the captors were well justified in arresting her, and referring her to the judicial tribunals to determine whether her original destination was not fraudulently intended for the blockaded port. Had the vessel been captured, at the place of her arrest, in the course of her navigation as documented, and without evidence of a reasonable necessity for her being placed in such vicinity to a blockaded port, here would be cogent reasons for regarding the voyage as concocted and in execution for the purpose of violating the blockade. But the material disasters she incurred at sea seem to me to remove the force of that suspicion, and to place the case before the court as it appeared to the captors on her giving herself into their charge, namely, that her position was reasonably accounted for by her crippled condition, and her inability to pursue and complete the voyage specified upon her papers. The court, on the proofs before it, must regard the owner as a neutral and the ship and cargo as neutral property, regularly documented and destined to a neutral port, and adapted to the trade and commerce of that port. No application having been made on the part of the libellants, to offer further testimony as to the integrity or culpability of the voyage, the general decree must be entered that the vessel and cargo be restored to the claimants, but without costs, there being probable cause shown on the proofs for her seizure.

The practical method of granting the remedy befitting the case has not been discussed or designated before me. Reparation is demanded by the counsel for the defence

against the captors. My first impression is that no formula de novo need be adopted in order to obtain relief for the wrong, but that the matter may be disposed of as an incident to the suit. All parties entitled to contest the subject are before the court, under its cognizance in the original action. This impression will not be regarded as conclusive of the question in any subsequent case, but for the present purpose I consider it to be at the discretion of the court to order a reference to commissioners or assessors, if prayed for, to ascertain and determine the amount of damages sustained by the claimant and the crew from the alleged illegal acts of the captors after the capture, as an incident to the pending suit, or to admit the parties to proceed by pleadings and proofs anew, and have the charges settled by a more formal method of proceedings. There seems to be no necessity for framing a formal issue, upon allegations and counter allegations, when the matter for relief is, in effect, pleaded in the claim, and thus the case is open alike to both parties. The Maria, Spinks, Prize Cas. 321. If no motion is addressed to the court by either party to require the interposition of pleadings to the point of damages, an order will be entered, if demanded, that the prize commissioners be appointed to ascertain and report to the court the damages sustained by the ship's company, or any of them, by means of the alleged misconduct of the captors towards them or their property after the capture.

March 6, 1862, on motion of the libellants, they were allowed to put in further proof, within twenty days as to the actual intention of the claimant to violate the blockade, and the claimant was permitted to give, within the same period further proof of his honesty of purpose. [See Case No. 7206.]